IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NASIR B.,<br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of the<br>Social Security Administration,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br>NO. 25-5336 |

**MEMORANDUM OPINION**

KATAYOUN M. COPELAND
UNITED STATES MAGISTRATE JUDGE September 30, 2026

Plaintiff Nasir B. ("Plaintiff") seeks review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). The administrative record ("R.") has been transmitted to the Court. ECF No. 12. For the reasons set forth below, this Court affirms the administrative decision.

## I. PROCEDURAL HISTORY

Plaintiff filed the application for SSI that is the subject of this appeal on August 22, 2022. (R. 34.) The state agency denied his claim initially, as well as on reconsideration, following which he requested a hearing. Administrative Law Judge ("ALJ") Philip Healy presided over a hearing held telephonically on May 9, 2024, at which Plaintiff, his mother, and a vocational expert ("VE") testified. An attorney appeared on Plaintiff's behalf at the hearing. (R. 45-67.)

The ALJ denied the claim in an August 2, 2024 written decision. (R. 26-40.) Plaintiff sought review in the Appeals Council, but that request was denied, making the ALJ's decision the final determination of the Commissioner. (R. 1-6.) Plaintiff then filed this action in federal court

and submitted his Brief and Statement of Issues in Support of Request for Review. ECF No. 13. The Commissioner filed a Response to Request for Review of Plaintiff. ECF No. 14. Plaintiff did not file a reply.

## II. LEGAL STANDARDS

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Upon a request for review under 42 U.S.C. § 405(g), the Court reviews the ALJ's factual findings for "substantial evidence" that the claimant was not disabled. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The review of legal questions presented by the Commissioner's final decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). *See also Poulos*, 474 F.3d at 91 ("We review the ALJ's application of the law de novo[.]").

## III. FACTUAL BACKGROUND

Plaintiff was diagnosed as a child, in or around 2007, with Behçet's disease, a chronic condition caused by vasculitis (blood vessel inflammation), which damages arteries and veins and typically presents with recurrent mouth sores and joint pain. This condition can also affect the brain. *See generally* https://my.clevelandclinic.org/health/diseases/12980-behcets-disease (visited Sept. 25, 2026). He has been under the care of a rheumatologist and receives immunosuppressant infusion therapy. When this condition has flared up, however, Plaintiff experienced oral ulcers, headaches,

fevers, weight loss, and neck and back pain. (R. 34.) Plaintiff completed high school on a regular education track and attended college for a short time. (R. 61-62.) In April 2022, he reported to his doctor that he was working as a parking valet and doing well with the Behçet's disease, although he also reported fatigue and headaches after infusions, for which the doctor adjusted his medications. (R. 836.)

Since his diagnosis, Plaintiff has experienced several neurological complications of Behçet's disease, starting with a venous sinus thrombosis (blood clot in the brain) in 2007, which was resolved with medication. In 2020, when he was 21 years old, he suffered a left occipital infarct (stroke) and began to experience seizures, which recurred when he did not adhere to his medication regimen or when his dosage was determined to be subtherapeutic. (R. 34, 1527.) In July 2021, after a period of missed medications, he suffered such a seizure and was hospitalized. (R. 835.) In August 2022, again in the context of missed doses of medication, he had a recurrence of seizures and was admitted to the hospital for seizure activity deemed "status epilepticus."[1] (R. 34, 1527.) He was 23 years old.

Upon discharge from the hospital, and having been let go from his parking valet job, he filed for SSI, alleging disability due to the seizures and the memory issues they caused, as well as the effects of the Behçet's disease, which he reported made him tired and caused both body aches and headaches. (R. 33.) In the months that followed, Plaintiff tried a job as a custodian but was let go

[1] Status epilepticus describes a condition in which someone has a continuous seizure of at least five minutes or multiple seizures without enough time to recover between them. *See* https://my.clevelandclinic.org/health/diseases/24729-status-epilepticus (visited Sept. 25, 2026).

because he could not remember instructions.[2] (R. 59.) *See also* R. 1565 (medical record from November 2022 recounting that Plaintiff had just been dismissed from custodial job).

Follow-up neurology records from March 2023 document that Plaintiff did not report having any further seizures in the months since his August 2022 hospital discharge but that he believed he had worsening short-term memory since that hospitalization and that his memory was poor continuously. (R. 1527.) His neurologist planned to refer him for both neuropsychological testing to quantify his deficits and to a program for additional help with memory, although the record does not document that Plaintiff pursued these referrals. (R. 1527.) Plaintiff presented to the emergency room in August 2023 fearing the onset of seizure but reported that he had been compliant with his medications and had not otherwise experienced a seizure in a while. (R. 35, 825.)

Plaintiff testified at the May 2024 hearing that the seizures "messed with [his] memory," while the Behçet's disease makes him tired and gives him pain throughout his whole body, stiffness, and severe headaches twice a month. (R. 54-56.) He testified that despite taking medication, he continued to have seizures twice a month and that they left him very tired and disoriented. (R. 54.) His mother, with whom Plaintiff lived, added her perspective, observing that Plaintiff gets confused a lot, has a very short attention span, and is always tired. (R. 58.) She recounted at the hearing that Plaintiff had not been able to hold jobs for a more than a few months because employers would grow "annoyed" that he could not remember things. (R. 59.) She also testified that "he's always in pain". (R. 60.) Plaintiff spends his days playing video games, watching TV, and socializing with friends. He is independent with personal care and his finances, and he goes out alone and takes public

[2] He did not hold that job long enough for it to qualify as "substantial gainful activity." (R. 28.)

transportation. (R. 35.)

None of Plaintiff's treating providers supplied a written opinion either about limitations his conditions cause him or as to his residual capacity for work activities. As part of its adjudicative process, the State Agency arranged for in-person consultative examinations of Plaintiff at the initial and at the reconsideration stage of State Agency review. Following an examination in April 2023, Beau Brendley, Psy.D., opined that Plaintiff had moderate restrictions in a number of areas (such as to understand/remember/carry out instructions or to make judgments, whether in simple or complex areas) because he "display[ed] impairments in recalling information." (R. 748.) Upon examination in October 2023 during the reconsideration phase, another psychologist, Dane Saunders, Psy.D., observed that Plaintiff's attention and concentration were "intact" and that his recent and remote memory skills were "mildly impaired due to possible cognitive deficits." (R. 864.) He noted that Plaintiff's intellectual functioning was average and his insight and judgment were fair. (*Id*). He ranked Plaintiff's limitations as "mild" as to simple activities and "moderate" as to more complex activities. (R. 867.) He assessed Plaintiff's degree of restriction in his ability to respond appropriately to changes in the routine work situations as "moderate" due to trauma and stressor related disorder. (R. 868.)

The State Agency also arranged for an internal medicine examination of Plaintiff by Anne Greenberg, M.D., in April 2023. Dr. Greenberg opined that Plaintiff could perform work at the "medium" exertional level and with up to four hours of standing and two hours of walking (and up to eight hours of sitting) in an eight-hour workday. (R. 730.) She also opined that Plaintiff could be exposed to unprotected heights and climb stairs or ramps "frequently" and could "occasionally" operate a motor vehicle, be around moving mechanical parts, and climb ladders or scaffolds. (R. 732-33.) The ALJ found Dr. Greenberg's opinion to be "internally inconsistent and not supported by

the examination results or the objective evidence in the record," and found that "[t]he evidence as a whole [was] not consistent with" the level of impairment found by Dr. Greenberg. (R. 36.) The ALJ also noted that the opinion was "not responsive regarding the standing and walking limitations."[3] (*Id.*) At the same time, he found that the non-exertional limitations that she identified were "generally persuasive, as they are well supported and consistent with the evidence," even as the ALJ explained that he "included more limitations based upon [Plaintiff's] testimony." (*Id.*)

As he considered the evidence as a whole, including the testimony before him at the May 2024 hearing, the ALJ found that Plaintiff's reported fatigue was supported by the medical evidence and limited him to low-stress work with limited interaction with others and at a lower exertional level – "light" – than had been selected by Dr. Greenberg. (R. 38.) He also agreed that Plaintiff's reported memory issues supported mental limitations. (*Id.*) But he determined that any additional limitations were not warranted "based upon the generally conservative, routine treatment record, which also reflected improvements in [his] condition." (*Id.*) These conclusions are reflected in his findings below.

## IV. DECISION UNDER REVIEW

The issue before the ALJ was whether Plaintiff was disabled under 42 U.S.C. § 1382c(a)(3)(d) from the date of his SSI application, August 22, 2022, through the date of decision, August 2, 2024. The ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a).

[3] A review of the Medical Source Statement of Ability to do Work-Related Activities form that Dr. Greenberg completed in conjunction with the narrative report of her examination did not provide any response in the portion of the form that asked her to "identify the particular medical or clinical findings … which support your assessment of any limitations and why the findings support the assessment." *See* R. 730 (§ II, addressing "sitting/standing/walking").

At Step One, he found that Plaintiff had not engaged in substantial gainful activity since his application date. (R. 28, Finding No. 1.) At Step Two, the ALJ found that Plaintiff had several medically-determinable impairments – specifically Behçet's disease complicated by venous sinus thrombosis and subcortical stroke; intracranial hypertension with neurologic involvement including seizures; and cognitive disorder – that significantly limited his ability to perform basic work activities, qualifying them as "severe" impairments. (R. 28, Finding No. 2.) At Step Three, the ALJ concluded that these severe impairments, whether considered individually or in combination, did not satisfy the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 – a finding that Plaintiff does not challenge. (R. 30, Finding No. 3.)

Having determined that Plaintiff did not establish disability at Step Three, the ALJ then proceeded to assess Plaintiff's residual functional capacity ("RFC"), which reflects an individual's maximum ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. §§ 416.920(e), 416.945. The ALJ found that Plaintiff had the capacity to perform light work, as defined in 20 C.F.R. § 416.967(b), as long as he had the option to sit or stand at his workstation, and with additional postural,[4] environmental,[5] and psychosocial[6]

[4] The ALJ found that Plaintiff could never kneel, crawl, climb (ladders, ropes, or scaffolds), or otherwise work with unprotected heights. He could only occasionally stoop, crouch, and balance. (R. 32, Finding No. 4.)

[5] Plaintiff had to avoid concentrated exposure to noise, vibration and fumes/odors/dusts/gases/poor ventilation. He could not work with hazards like dangerous moving machinery or with very loud noise such as a jackhammer, nor could he operate a motor vehicle. (R. 32, Finding No. 4.)

[6] Plaintiff could not have interaction with the public and could have only occasional interaction with co-workers and supervisors. He could not engage in high-stress work, which the ALJ defined as work with production quotas or an assembly-line pace. (R. 32, Finding No. 4.)

limitations. (R. 32, Finding No. 4.) The ALJ determined that Plaintiff could understand, remember and carry out simple instructions and deal with occasional workplace changes. (*Id.*) He justified his RFC finding as "the most accurate assessment of the claimant's work-related capabilities since the protective filing date" with the following explanation:

> [T]reatment notes and examination records do not sustain the claimant's allegations of disabling symptoms and limitations. The claimant experiences some symptoms and limitations; however, the record is not entirely consistent and does not fully support the severity of the claimant's allegations. Nonetheless, the claimant's combination of impairments supports the less-than-light residual functional capacity indicated above. The claimant's reported fatigue is supported by the medical evidence, and it supports the limitations regarding light, low-stress work with limited interaction. The claimant's reported memory issues support the mental limitations. No additional limitations are supported based upon the generally conservative, routine treatment record, which also reflected improvements in the claimant's condition.

(R. 38.)

The ALJ applied his RFC finding at Step Four. He agreed that Plaintiff could not perform past relevant work, as the VE testified that the requirements of Plaintiff's past position as a parking valet exceeded what the ALJ found to be the RFC. (R. 38, Finding No. 5.) The ALJ then proceeded to Step Five, at which he was to assess whether Plaintiff was capable of performing any other jobs that exist in significant numbers in the national economy considering Plaintiff's age as a "younger individual," high school education, lack of transferable skills, and RFC. The ALJ recognized that Plaintiff's exertional and non-exertional limitations compromised his ability to perform the full range of work but considered whether those limitations substantially altered Plaintiff's ability to meet the requirements of particular unskilled occupations. (R. 39.) At the hearing, the VE testified about several jobs at the light exertional level – such as electronics worker, garment sorter, and price marker – that had a suitably low level of required specific vocational preparation. (R. 32.) On the basis of that testimony, the ALJ concluded that Plaintiff was capable of performing jobs that existed

in significant numbers in the national economy and thus was not disabled. (R. 39-40 & Finding Nos. 9-10.)

## V. DISCUSSION

Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence because it was formulated "through lay interpretation without medical-opinion support." (Pl. Br. at 4.) He also contends that the ALJ's decision cannot be said to be supported by substantial evidence because he selectively cited evidence to discount Plaintiff's alleged seizure-related fatigue and cognitive limitations. (Pl. Br. at 7.) He contends that this "cherry-picking" also prohibits meaningful review. (*Id.*) The Commissioner responds that the ALJ's evaluation of Plaintiff's impairments, as well as the RFC finding, are supported by substantial evidence and that he reasonably concluded that Plaintiff's allegations of more restrictive limitations were inconsistent with medical and nonmedical evidence in the record. (Def. Br. at 4, 15.)

### A. The ALJ formulated the RFC finding in accordance with the Regulations and need not have predicated it upon an identical medical opinion in the record.

Plaintiff first contends that the Court should vacate the ALJ's decision and remand because "the ALJ formulated the RFC through lay interpretation without medical-opinion support." (Pl. Br. at 4, III.1.) He contends that, because the ALJ did not adopt any single opinion that was in the record, it is not apparent how he reached his RFC finding that Plaintiff could perform a limited range of work at the light exertional level. He argues that the ALJ impermissibly interpreted "raw medical data," which would be beyond his expertise, and that we cannot give meaningful judicial review to such a decision, as we cannot discern "how the ALJ rationally moved from" complex medical records to the RFC he adopted after rejecting all of the medical opinions about Plaintiff's exertional capacity. (Pl. Br. at 5-6.) We disagree.

The Regulations and Rulings empower – and require – the ALJ to make an RFC finding based upon the record. They do not require the ALJ to point to an identical medical opinion in the record. While Plaintiff cites to instances in another district where claims were remanded for such a reason, the Third Circuit, in a precedential opinion, counsels that "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chander v. Commissioner of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The *Chandler* court recognized that while reliance on opinions in the record "is common," and that ALJs are required to consider any State consultant reports, "the regulations do not require ALJs to seek outside expert assistance[.]" *Id.* The court found no error, as alleged in that appeal, when the ALJ allegedly "extrapolated from" an earlier State consultant medical opinion in the record. *Id.*

The ALJ's reconciliation of the opinion evidence here may not have been a model of clarity but is sufficient. The ALJ described Dr. Greenberg's report of the consultative examination and her accompanying opinion, including her view that Plaintiff's maximum capacity for standing in an eight-hour workday was four hours and his capacity for walking was two hours. He specifically found her opinion "not responsive" regarding these limitations, which is a fair assessment, given that Dr. Greenberg did not provide any narrative response in the portion of the form asking her to justify and explain any rating she gave that the individual could not complete a full eight hours of any of the listed activities of "standing," "walking," or "sitting." *See* R. 730 ("Identify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain etc.) which support your assessment or any limitations and why the

findings support the assessment"; no response given).[7] The ALJ also stated, as to Dr. Greenberg's opinion regarding non-exertional limitations specifically, that he "included more limitations based upon the claimant's testimony," (R. 36), which is apparent in the addition of the requirement that any job offer a sit-stand option and in his reduction of the lifting capacity from the "medium" level to the "light" level.[8]

Plaintiff has not identified what aspect of Dr. Greenberg's narrative report or RFC opinion would have been more favorable to him – and none is apparent to us. We see no reversible error in the ALJ's reconciliation of the opinion evidence.

**B. The ALJ sufficiently discussed the evidence and justified his findings about the extent of Plaintiff's limitations.**

Plaintiff's other assertion of error is that the ALJ selectively relied on Plaintiff's "normal" activities and presentation, and that the ALJ improperly discounted the fatigue and cognitive limitations that resulted from Plaintiff's seizures. *See also* Pl. Br. at 9 (accusing the ALJ of not "grappling with" evidence of Plaintiff's neuro-ICU hospitalization, including intubation, in the

---

[7] At the same time, the ALJ ultimately agreed with the implication of Dr. Greenberg's opinion: that Plaintiff's capacity for standing and walking accommodated the demands of "light" work, which involves "a good deal of walking or standing," defined as approximately 6 hours in total in an 8-hour workday. *See* 20 C.F.R. § 416.967(b); SSR 83-10.

[8] The ALJ's discussion did not make clear what particular aspects of the opinion he found "internally inconsistent." One apparent inconsistency, however, is with Dr. Greenberg's recognition of Plaintiff's "history of seizures" (R. 728) and her opinion that he could "occasionally" work around moving mechanical parts or operate a motor vehicle and that he could "frequently" be exposed to unprotected heights. (R. 733.) The ALJ ultimately determined that Plaintiff could never work with hazards like dangerous moving machinery, operate a motor vehicle, or be exposed to unprotected heights. (R. 32, Finding No. 4.)

August 2022 admission). *See also id.* (including his contention that the ALJ's "selective analysis frustrates meaningful review"). We disagree.

Plaintiff's argument effectively asks the Court to re-weigh the evidence, which is not the function of review under 42 U.S.C. § 405(g). It is apparent that even as the ALJ cited the "normal" activities in which Plaintiff engaged, the ALJ recognized that fatigue and memory loss impacted Plaintiff to a degree as well. (R. 38.) For example, he assessed Plaintiff with a greater degree of limitation than some of the consultative or reviewing physicians. As compared to Dr. Greenberg, who conducted the internal medicine consultative examination, the ALJ limited Plaintiff to a lower exertional level and required that he have a sit-stand option. (R. 32, 36, 729.) In contrast to the psychological examiners, he restricted Plaintiff from work involving interaction with the public or the ability to maintain pace requirements. (R. 32, 36-37, 749, 868.) And while the ALJ noted that an ambulatory EEG study Plaintiff underwent subsequent to his August 2022 hospitalization did not show seizure activity (R. 34), Plaintiff's past history of seizures warranted following protocols – such as avoiding work around hazardous machinery or on scaffolds – to protect him from danger should he have a recurrence. The ALJ's recitation of some of the normal results did not mean that he dismissed the notion that some limitations or restrictions were warranted.

Plaintiff points to the portions of the record that "documented short-term memory impairment with concrete functional consequences" (Pl. Br. at 8), as if the ALJ neglected it. But the record Plaintiff cites[9] concerns a period shortly after his August 2022 hospitalization, which does not

[9] Plaintiff's cited authority, R. 1565, is a letter dated November 10, 2022, from a clinic appointment. It recounted that after his hospitalization and the attendant loss of his parking valet job, Plaintiff tried work as a custodian but was dismissed because he found it difficult to remember tasks.

necessarily indicate his functional level throughout the two-year period under review. *See also* R. 38 (observation by the ALJ that the treatment record "also reflected improvements in the claimant's condition"). (R. 38.) The record also includes multiple consultative examinations capturing Plaintiff's functioning in April and October 2023 (R. 723-43, 744-56, 862-75), and later records of Plaintiff's treatment into 2024 are also found in the record (R. 876-1100).

We do not agree with Plaintiff that the ALJ sidestepped the neurological aspect of his experience of Behçet's disease. The ALJ made accommodations for the potential that Plaintiff might experience seizures again by restricting him to workplaces that would not endanger him. The ALJ also included mental limitations in his RFC finding to accommodate Plaintiff's reported "memory issues" following his experience of seizures and from fatigue. (R. 38.) The ALJ was permitted to conclude that Plaintiff's experience of occasional seizures[10] and the fatigue or short-term memory difficulties they caused did not preclude him from the work identified by the VE, particularly as "the generally conservative, routine treatment record … reflected improvements in [Plaintiff's] condition." (R. 38.)

## VI. CONCLUSION

We are sympathetic to the challenges Plaintiff (and his mother) have faced in managing a complex medical condition from an early age, and we do not minimize the experience of frightening symptoms that have recurred when Plaintiff fell out of compliance with his prescribed medical

[10] The medical records do not corroborate the frequency of seizures as Plaintiff testified to at the hearing. When the ALJ asked Plaintiff's mother how many times a year Plaintiff would "wind up in the hospital," she estimated seven or eight times. (R. 62.) The record does not document so many hospitalizations or ER visits in the relevant period, nor did Plaintiff report to his doctors that he suffered so many seizures.

treatment. But the ALJ carefully considered what workplace restrictions could accommodate Plaintiff's condition while enabling him to carry out work functions with the capacities he retains. With the benefit of VE testimony, he concluded that there are jobs that Plaintiff can perform notwithstanding his diagnoses.

Plaintiff asks for a remand "for the agency to obtain and evaluate appropriate medical opinion evidence[.]" (Pl. Br. at 10.) But the State Agency commissioned *three* such evaluations and medical opinions, none of which identified limitations that would result in a finding of disability, even when considered in the aggregate. Furthermore, Plaintiff offered no contrary opinion from any of his treating providers. On this record, there is no basis to reverse the ALJ's decision under sentence four of 42 U.S.C. § 405(g). The ALJ complied with his responsibility to formulate a finding of Plaintiff's RFC, and the lack of an identical medical opinion in the record does not invalidate his finding. We decline Plaintiff's invitation to re-weigh the evidence to reach a different conclusion from the ALJ about the impact of his seizure disorder. The final decision of the Commissioner is supported by substantial evidence.

The request for review will be denied. An appropriate order will follow.